UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff/Respondent, | ) ) ) | No. 5:13-CR-52-KKC-HAI-11 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| BRUCE A. HARRISON, | ) ) | & ORDER |
| Defendant/Movant. | ) ) ) | |

*** *** *** ***

By motion docketed March 7, 2017, *pro se* Defendant Bruce Harrison moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 746. He also moves for an evidentiary hearing (D.E. 757) and asks for "a numerically second suppression hearing" if his conviction is vacated (D.E. 756-1 at 8). Harrison's motion is untimely and his claims are barred by a waiver provision in his plea agreement. The Court therefore recommends that the motion be denied.

Section 2255 provides that a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Harrison is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than other motions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

## I. Background

In April 2014, Harrison pleaded guilty to participation in an oxycodone distribution conspiracy and possessing a firearm while a felon. D.E. 483, 484. Judgment was entered August 19, 2014. D.E. 632.

A year earlier, in August 2013, Harrison had moved to suppress evidence seized pursuant to a search warrant. D.E. 192. The search warrant was based largely on information obtained during a controlled drug buy at his residence using a confidential informant equipped with a hidden video camera. *Id*. Harrison argued for suppression on the basis that the portion of his house from which the evidence was seized was actually a separate apartment. *Id*. He now argues that the search warrant was "unlawful" and the product of "prosecutorial misconduct." D.E. 746 at 1.

On September 17, 2013, Chief Judge Caldwell conducted an evidentiary hearing on the motion to suppress. D.E. 210, 218 (transcript). At the hearing, the witnesses discussed a confidential informant who had been Harrison's tenant in the residence.[1] According to testimony, law enforcement orchestrated a controlled drug purchase using the confidential informant on May 3, 2013. The informant carried a concealed video camera into the house. Although the video captured by the informant was not played at the evidentiary hearing due to technical difficulties, the recording was entered into evidence. D.E. 218 at 62-64. Harrison's attorney Richard Melville informed Judge Caldwell that Melville had seen the video. *Id*. at 59.

---

[1] According to Harrison's motion, he had evicted the confidential informant from the attached apartment prior to the controlled drug purchase, and the informant never returned the keys. D.E. 746 at 8.

2

Judge Caldwell also watched the video before issuing her ruling. D.E. 282 at 4. After the September 17 hearing, the government filed a brief in opposition to the suppression motion (D.E. 246), and Harrison replied (D.E. 249). Judge Caldwell denied the motion, finding that the facts available to law enforcement at the time of the search did not suggest that Harrison's house contained two separate residences. D.E. 282 at 10.

Harrison later moved for release of *Brady* materials (D.E. 422) and filed a motion seeking "copies of audio and visual CDs of the same quality as those that will be presented as evidence at trial" (D.E. 423). In the latter motion, Harrison's counsel explained that the audio recording made by a confidential informant on February 7, 2013, was difficult to hear. *Id*. He also explained that a video produced by the confidential informant on May 3, 2013, was recorded upside-down, making it "very difficult to watch." *Id*. He therefore asked for copies of the audio and video recordings in the form the government planned to present at trial, which presumably would be better quality. *Id*. This motion was eventually rendered moot by Harrison's guilty plea.

In March 2014, Mr. Melville was allowed to withdraw from representing Harrison due to "irreconcilable differences," and Adele Burt Brown took his place. D.E. 432, 434, 444. Shortly thereafter, the Court relieved Ms. Brown and replaced her with Pam Ledgewood. D.E. 442, 445. Harrison pleaded guilty on April 16, 2014. D.E. 483. In his plea agreement, along with the firearms charge, Harrison admitted selling oxycodone to the confidential informant on May 3, 2013, the date of the video-recorded controlled purchase. D.E. 484 at 2 ¶ 3(c); D.E. 218 at 61, 82.

Harrison now moves to vacate his conviction. D.E. 746. His substantive claim appears to be that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose

3

certain facts prior to the suppression hearing, which Harrison characterizes as a "preliminary trial." D.E. 746 at 16; D.E. 756-1 at 2-3, 18. He also accuses an agent of committing perjury at his suppression hearing. *Id*. at 7. But Harrison's motion is untimely and barred by the waiver in his plea agreement.

## II.  Harrison's Motion is Untimely

Judgment was entered on August 19, 2014. D.E. 632. Harrison did not appeal. The one-year time limit for filing a 28 U.S.C. § 2255 motion typically begins on "the date on which the judgment of conviction becomes final." *Id*. § 2255(f)(1). Absent an appeal, "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castello v. United States,* 358 F.3d 424, 427 (6th Cir. 2004). Federal Rule of Appellate Procedure 4(b)(1)(A) provides that, in a criminal case, "a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." In this case, Harrison's conviction became "final" for purposes of § 2255(f)(1) on September 2, 2014, fourteen days after the Judgment was entered. Thus, under § 2255(f)(1), Harrison was required to file his motion on or before September 2, 2015. His motion, filed in March 2017, is untimely under subsection (f)(1).

However, Harrison points to subsection 2255(f)(4), which provides one year to file from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." D.E. 746 at 3. For the reasons explained below, he cannot rely on this subsection.

The statute of limitations is an affirmative defense. The party that asserts that defense—in this case, the Warden—has the initial burden of demonstrating that the statute has run. *Griffin*

4

*v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). However, when the petitioner relies on subsection 2255(f)(4), the petitioner bears the burden of persuading the Court that he has exercised due diligence in his search for the factual predicate of his claim. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (applying this principle in a state habeas case under § 2254); *see also Gillis v. United States*, 729 F.3d 641, 645 (6th Cir. 2013) (applying this principle from *DiCenzi* in a § 2255 case). This showing does not require the maximum feasible diligence, only "due" or "reasonable" diligence in light of the difficulties inherent in the prison environment. *DiCenzi*, 452 F.3d at 470. A court's "proper task" in evaluating due diligence is "to determine when a duly diligent person in petitioner's circumstances would have discovered" the factual predicate. *Id.* A petition that "merely alleges" the petitioner did not actually know the facts underlying his claim is "insufficient to show due diligence." *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997)); *accord McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x 22, 29 (6th Cir. 2012). Instead, the petitioner is "required" to provide evidence establishing the date on which he could have discovered the factual predicate through due diligence. *Gillis*, 729 F.3d at 644-45; *accord Moore v. United States*, 438 F. App'x 445, 448 (6th Cir. 2011).

Harrison identifies four specific pieces of "newly discovered information." D.E. 746 at 4. However, these alleged new facts do not trigger § 2255(f)(4).

### A.

First, Harrison states that he has "received actual video and audio surveillance of the 'confidential informant' at the time in which police considered the footage to be actionable for the warrant." D.E. 746 at 4. He states he received this video in December 2016. *Id.* at 19.

5

These recordings created in May 2013 are not newly-discovered evidence under § 2255(f)(4). The record makes clear that Harrison's attorney Richard Melville had reviewed the recordings prior to the September 2013 evidentiary hearing on Harrison's motion to suppress. D.E. 218 at 59. Then, in March 2014, Mr. Melville filed a motion in which he described the audio as difficult to hear and the video as difficult to watch. D.E. 423. Harrison states that his subsequent attorney Ms. Brown told him "prior to the plea that she viewed the tapes." D.E. 756-1 at 9. The fact that Harrison's counsel possessed and played these recordings prior to his guilty plea suggests they were not inaccessible to him. *See McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x 22, 29–30 (6th Cir. 2012) (placing the burden on the petitioner to explain why he could not know, through due diligence, a fact that was known by his father's attorney, who later represented him). Harrison states that he never reviewed these recordings with his attorney. D.E. 756-1 at 3. But he does not explain why he could not have reviewed these materials before or during the limitations period, given due diligence, when his own counsel possessed them. Additionally, Harrison should have been aware of the contents of the recordings because he was present when the confidential informant made them.

Harrison appears to argue in the alternative that the enhanced and cleaner versions of the recordings constitute new evidence. D.E. 756-1 at 9. But he does not explain why or how the information contained in the cleaned-up versions would differ from the originals. For these reasons, Harrison's receipt of the recordings in December 2016 does not trigger the alternative limitations period described in § 2255(f)(4).

**B.**

Second, Harrison states that he has "received [a] sworn statement from [a] realtor that the [apartment attached to his house] is listed for public view as a sep[a]rate residence privately

occupied by [a tenant]," and that this "[a]partment was HUD approved."  D.E. 746 at 4.  Harrison attaches a real estate listing from June 2012 describing the house as containing "a separate entry to a one bedroom apartment."  D.E. 746-1 at 2.  The listing is accompanied by an affidavit from the realtor, signed on December 20, 2016.  D.E. 746-1 at 3.  It states that the attached listing was "posted . . . from June of 2012 thru May 2013."  *Id.*

Although the realtor's affidavit was produced in 2016, the affidavit makes clear that the listing was posted from June 2012 to May 2013.  And the affiant describes himself as "Bruce Harrison's realtor," which suggests that Harrison was personally aware of the listing.  D.E. 746-1 at 3.  In any event, as a public advertisement, the listing was not unavailable, through due diligence.  Harrison does not explain why he could not have obtained this listing earlier, especially since the listing was a publicly available advertisement produced by his own agent.[2]  This evidence, like the recordings, fails to trigger § 2255(f)(4).

## C.

Third, Harrison states that he has "received factual evidence that the informant used was under a criminal justice pending charge, and did not meet eligibility for CI requirements."  According to Harrison, the informant is the defendant identified in 5:15-CR-89-KKC-EBA-3, which is a prosecution for arson.  *See* D.E. 746 at 10   The government agrees.  D.E. 749 at 7.  According to the indictment in that case, the informant set a residence on fire in November 2012 in an attempt to gain insurance money.  This arson occurred before the controlled buy at Harrison's home in May 2013.  In October 2015, the informant was indicted for arson, and he pleaded guilty in March 2016.  Harrison apparently argues that, because the informant was engaging in criminal activity while an informant, his information was not sufficiently credible to

---

[2] Further, testimony at the suppression hearing mentioned a "listing" of the property that was available on the internet.  D.E. 218 at 61.  This also suggests that Harrison was aware of the listing.

7

be used as the basis for Chief Judge Caldwell's finding of probable cause to issue the warrant for the search of Harrison's home. D.E. 746 at 9-10.

Regardless of whether Harrison's argument on the reliability of the informant has merit, the fact that the informant was committing crimes is not newly discovered evidence that was unavailable until after Harrison's limitations period. Harrison states that, prior to his plea, his attorney Ms. Ledgewood told him "an arson was involved" in the case and someone was going to go to jail for it. D.E. 756-1 at 10. He states that the informant "gave testimony" regarding the arson case on July 23, 2015, which was during his limitations period. D.E. 756-1 at 16. Harrison does not explain *when* he could have come to know through due diligence that the informant was an arsonist. Therefore, he does not meet his burden under § 2255(f)(4). *See Gillis*, 729 F.3d at 644-45 (requiring a petitioner to provide evidence establishing the date on which he could have discovered the factual predicate through due diligence).

**D.**

Fourth, Harrison states he "intends to make the showing that police [were] not forth-coming with prosecutors when submitting the sworn affidavit for the search warrant; or that the government was aware of the erroneous information used to obtain the search warrant and [misled] the court causing prosecutorial misconduct." D.E. 746 at 4. On this issue, Harrison does not provide sufficient detail for the Court to determine what particular facts, if any, Harrison claims were unavailable before or during the limitations or when those facts could have been obtained through due diligence. This undeveloped assertion fails to satisfy subsection 2255(f)(4) under the authorities discussed above.

## E.  Equitable Tolling

In addition to his arguments invoking § 2255(f)(4), Harrison argues for equitable tolling under *Holland v. Florida*, 560 U.S. 631 (2010).  D.E. 756-1 at 20.  Under *Holland*, a petitioner is entitled to equitable tolling of the habeas statute of limitations if he proves (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  *Holland*, 560 U.S. at 649.  The bar to equitable tolling is a high one. "Absent compelling equitable considerations, a court should not extend limitations by even a single day."  *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brookes Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).  The constraining external circumstance must be something "extraordinary," *id.*, such as "egregious attorney misconduct," *Holland*, 560 U.S. at 634, or the movant's "profound mental incapacity," *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004).  Harrison argues that this standard is satisfied in his case by virtue of (1) attorney negligence in the form of bad advice leading up to the plea deal and (2) the government's failure to disclose the recordings in an easily-viewable form.  D.E. 756-1 at 20-21.

However, the focus of *Holland* and its progeny is on extraordinary circumstances (such as attorney negligence during the limitations period) that prevent a petitioner from filing a timely post-conviction motion.  Harrison does not explain how events that preceded his conviction prevented him from timely filing a § 2255 motion, aside from his assertion that he did not have all the evidence he wanted until recently.  But lacking evidence is not an extraordinary circumstance.  It is certainly not the type of circumstance that typically warrants *Holland* tolling, such as mental incompetency or attorney misconduct during the limitations period.  This motion does not warrant equitable tolling.

9

### III. Harrison's Motion is Barred by the Waiver in His Plea Agreement

Even if Harrison's § 2255 motion were timely, it would be barred because he waived the right to file it. Harrison's plea agreement contains the following waiver provision: "The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. **Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.**" D.E. 484 at 5 ¶ 8 (emphasis added). Again, Harrison did not appeal. And Harrison denies that he is raising an ineffective-assistance-of-counsel claim. D.E. 746 at 22 ("Mr. Harrison has not made a claim of ineffective assistance of counsel."). Thus, unless he can show that his plea was invalid, this waiver provision bars Harrison's current § 2255 motion.

Harrison's sole argument on this point is that, at the time of his plea, he was not aware of police "misconduct" that has since come to light. D.E. 746 at 18. Specifically, he takes issue with the factual basis underlying the search warrant and the evidence presented at his suppression hearing. Harrison states that had he been aware of this misconduct, he would not have pleaded guilty. *Id*. Harrison appears to argue that, due to his lack of knowledge concerning the prosecutorial misconduct, his plea was not knowing and voluntary. *Id*. at 14-17.

Federal Rule of Criminal Procedure 11 governs plea colloquies. The Rule "is meant to ensure that the district court is satisfied that" a guilty plea is made knowingly, voluntarily, and intelligently. *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* at 378-79. When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant

10

is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Accordingly, in cases where the court has followed Rule 11's procedural requirements, "absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court.*" *Id*.

Harrison identifies no defect in his Rule 11 plea colloquy. Instead, his argument is that he was unaware at the time of his plea that law enforcement had committed misconduct in procuring the search warrant and in testifying at Harrison's suppression hearing. D.E. 746 at 18. He argues that *United States v. Fisher*, 711 F.3d 460, 462 (4th Cir. 2013), supports his position on this issue. *Id*. at 14-15.

*Fisher* was an "extraordinary case" in which "the law enforcement officer responsible for the investigation that led to the defendant's arrest and guilty plea himself later pled guilty to having defrauded the justice system in connection with his duties as an officer." *Fisher*, 711 F.3d at 462. Regarding the *Fisher* case specifically, "the officer admitted to having lied in his sworn affidavit that underpinned the search warrant." *Id*. The Fourth Circuit held that "the officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered the defendant's plea involuntary and violated his due process rights." *Id*. That case, the appellate court specified, presented "highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution's case." *Id*. at 466.

Not only are the facts of *Fisher* extraordinary, but its holding has been characterized as "an outlier." *United States v. Ware*, No. 3:13-CR-26-GFVT-REW-1, 2016 WL 9276026, at *10

11

n.12 (E.D. Ky. July 26, 2016) (citing *United States v. Rains*, No. 1:06-CR-35-MP, 2015 WL 4647292, at *7 (N.D. Fla. Aug. 5, 2015) ("[T]he persuasiveness of *Fisher* is questionable."), *report and recommendation adopted*, 2017 WL 2876470 (E.D. Ky. July 6, 2017). Like the defendant in *Ware*, Harrison "in no way proves the type of misleading or blatantly improper behavior" as described in *Fisher*, even assuming *Fisher* is good law. *Ware*, 2016 WL 9276026, at *10.

Harrison also cites *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), and argues that he satisfies the seven-factor test for withdrawing a plea under the standard now found in Rule 11(d). D.E. 756-1 at 2. However, as Rule 11(e) states, "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Accordingly, Rule 11(d) and *Bashara* are not applicable to Harrison's current challenge to his guilty plea.

### IV. Conclusion

Because Harrison's § 2255 motion is both untimely and barred by his valid plea waiver, the undersigned **RECOMMENDS** that the motion (D.E. 746) be **DISMISSED**. The Court also **RECOMMENDS** that no Certificate of Appealability should issue.

This case also does not warrant an evidentiary hearing. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007). "It follows that

12

if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In this case, even taking as true Harrison's factual allegations that are not contradicted by the record, they would not entitle him to relief. The record therefore "conclusively show[s]" he is not entitled to relief. *Arredondo*, 178 F.3d at 782. **IT IS HEREBY ORDERED THAT** Harrison's motion for a hearing (D.E. 757) is **DENIED.**

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. *See* 28 U.S.C. § 2253(c)(2). When a case is dismissed on procedural grounds, a Certificate may only issue if the movant can show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Harrison admits his petition is untimely under subsection 2255(f)(1) and fails to justify the invocation of subsection 2255(f)(4) or equitable tolling. And, even if the motion were timely, it would be barred by the waiver in his plea agreement. That his motion is barred is not debatable.

Any objection to, or argument against, dismissal must be asserted properly and in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

13

and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of August, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge